**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM HEIDERMAN and JULIE HEIDERMAN as personal representatives of BERNICE HEIDERMAN, WILLIAM HEIDERMAN, JULIE HEIDERMAN, and GRACE HEIDERMAN, | ) ) ) ) ) ) |
| Plaintiffs, | ) Case No. 20 C 7579 |
| v. | ) ) Judge Joan H. Lefkow |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

William, Julie, and Grace Heiderman filed this action under the Federal Tort Claims Act after the death of Bernice Heiderman, a Peace Corps volunteer. The United States moves to dismiss the claims for lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

On January 9, 2018, Bernice Heiderman, a Peace Corps volunteer stationed in Comoros, a foreign country, died from undiagnosed malaria. In the days leading up to her death, she sought treatment from Peace Corps medical staff, who provided various over-the-counter remedies, twice unsuccessfully attempted to administer an IV, and ordered a basic metabolic panel. Peace Corp medical staff never suggested testing or treating Bernice for malaria before her death.

Later that day, a Peace Corps representative called the Heiderman family and informed them that Bernice had died that morning. Bernice's father, William, who had answered the

phone, immediately asked why Bernice had not been medically evacuated; the representative allegedly responded that Bernice had not died of infection.

In the following days, the Heidermans had a series of distressing conversations with Peace Corps representatives, most of which involved blaming Bernice or her family for her death. One official told the family that the Peace Corps "never knew Bernice was seriously ill." (Dkt. 1, ¶ 94.) After Bernice's autopsy, a Peace Corps representative told the family that Bernice probably caused her own death by failing to take her medication. Other representatives asked the family why they never asked if Bernice had been tested for malaria. The Peace Corps also sent numerous letters to the family regarding donations made in Bernice's name that would be used for "malaria prevention workshops." (Dkt. 1, ¶ 110.)

Then there were complications returning Bernice's body to her family in the Chicago area. Peace Corps officials provided conflicting information about when Bernice's body would arrive and why it had been delayed. Eventually, officials admitted that they were not sure where Bernice's body was. Her body arrived at O'Hare International Airport on January 24—four days after the scheduled funeral. The Heidermans also had trouble collecting their daughter's body at the airport due to a miscommunication between the Peace Corps and the Department of Homeland Security.

The Heidermans filed administrative claims with the Peace Corps in October 2019. When those were denied, William and Julie Heiderman brought a wrongful death claim on behalf of Bernice's estate, and William, Julie, and Grace Heiderman brought individual claims for negligence, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED) under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80.

The government now moves to dismiss the wrongful death and negligence claims for lack of subject matter jurisdiction under Rule 12(b)(1) and the remaining claims for failure to state a claim under Rule 12(b)(6). Alternatively, the government seeks to stay proceedings pending review of the wrongful death claim by the Secretary of Labor under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8102–93.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Where the defendant challenges subject matter jurisdiction based on the face of the complaint, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Meridian Sec. Ins. Co.* v. *Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). The party asserting federal jurisdiction has the burden of proving jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd.* v. *Burwell*, 770 F.3d 586, 589 (7th Cir. 2014).

A Rule 12(b)(6) motion challenges the complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ANALYSIS

The government asserts two theories under Rule 12(b)(1) for dismissing the wrongful death claim for lack of jurisdiction. It first argues that the FTCA's foreign country exception in § 2680(k) applies and thus the court lacks jurisdiction to consider this claim. Alternatively, it argues that there is a substantial question whether FECA provides the exclusive remedy for the

3

wrongful death claim, and so the claim should be dismissed or stayed pending review by the Secretary of Labor.

As a preliminary matter, it is unclear whether the FTCA's exception to the waiver of sovereign immunity for claims arising in foreign countries falls under Rule 12(b)(1) or Rule 12(b)(6). Section 1346(b)(1) of the FTCA grants jurisdiction to federal district courts over claims for money damages against the United States based on negligent or wrongful conduct by federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But the waiver of sovereign immunity is subject to various exceptions, including the one at issue here. The FTCA thus creates a unique context where a jurisdictional analysis under Rule 12(b)(1) and a merits analysis under Rule 12(b)(6) motion may be identical. *See Scholz* v. *United States*, No. 20-2163, 2021 WL 5467015, at *6 (7th Cir. Nov. 23, 2021). Accordingly, in the FTCA context, a motion attacking an element of jurisdiction that is also a merits element may be decided under either Rule 12(b)(1) or Rule 12(b)(6). *See Brownback* v. *King,* 141 S. Ct. 740, 749 n.8 (2021) ("In cases . . . where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both.")

The government suggests that, after *Brownback*, dismissal based on the FTCA's exceptions in § 2680 fall under Rule 12(b)(1) rather than Rule 12(b)(6). But *Brownback* did not address a § 2680 exception. Rather, it dealt with a dismissal for failure to adequately plead the last element of § 1346(b)(1), that "the United States, if a private person, would be liable to the claimant" under state law. 141 S. Ct. at 749; *see also Chaba* v. *U.S. Postal Serv.*, No. 20 C 4517,

4

2021 WL 1293830, *4 (N.D. Ill. Apr. 7, 2021).[1] The Seventh Circuit previously determined that FTCA exceptions do not limit federal courts' jurisdiction to adjudicate FTCA claims but instead limit the plaintiff's ability to achieve relief. *See Parrot* v. *United States*, 536 F.3d 629, 634–35 (7th Cir. 2008). As such, FTCA exceptions have been treated as affirmative defenses that must be raised by the government, *see Bunch* v. *United States*, 880 F.3d 938, 942 (7th Cir. 2018), and which may be decided on a Rule 12(b)(6) motion only where "the factual allegations in the complaint unambiguously establish all the elements of the defense," *Hyson USA, Inc.* v. *Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

The government argues in its reply brief that the Supreme Court has effectively decided that § 2680 exceptions are jurisdictional because they limit the scope of the waiver of sovereign immunity under § 1346(b)(1). The Heidermans argue for following the Seventh Circuit's previous practice of considering FTCA exceptions as affirmative defenses. As the Seventh Circuit more recently noted, however, where the FTCA requires a fact-specific analysis for both jurisdictional and merits analyses, the court may proceed as if simply addressing the merits. *See Scholz*, 2021 WL 5467015, at *6. Accordingly, and in line with practice in this circuit, the foreign country exception will be treated as an affirmative defense and decided under Rule 12(b)(6). *See id.*; *Chaba*, 2021 WL 1293830, at *4.

On the merits of the defense to the estate's claims, the foreign country exception unquestionably applies because the complaint alleges that the harm occurred in a foreign

---

[1] It is unclear whether the Heidermans adequately alleged that the United States would be liable to the claimant under "the law of the place where the act or omission occurred" for the wrongful death claim. 28 U.S.C. § 1346(b)(1). The complaint repeatedly notes that Peace Corps officials with ultimate decision-making authority were in Washington, D.C., but Bernice Heiderman suffered from inadequate medical care and ultimately died in Comoros, a foreign country whose liability laws are unknown. Because neither party developed this argument and the foreign country exception requires dismissal of this claim regardless, the question need not be decided.

country. *See Sosa* v. *Alvarez-Machain*, 542 U.S. 692, 712 (2004) ("[T]he FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred."). Although the Heidermans argue that the equitable doctrine of unclean hands should bar application of § 2680(k) where its application would "reward" the Peace Corps for failing to follow its own guidelines and evacuate Bernice Heiderman (dkt. 17, at 9), they cite no authority supporting the assertion. The wrongful death claim therefore must be dismissed under Rule 12(b)(6). *See Hyson USA, Inc.*, 821 F.3d at 939. The dismissal, however, is without prejudice so that the Heidermans may file a claim with the Secretary of Labor under FECA, which covers injuries sustained by Peace Corps volunteers in foreign countries.[2] *See* 5 U.S.C. § 8142.

The government next argues that the Heidermans' negligence claim should be dismissed under Rule 12(b)(1) because it is barred under § 2680(h)'s misrepresentation exception. As with the foreign country exception in § 2680(k), whether this motion should fall under Rule 12(b)(1) or Rule 12(b)(6) is unclear, but the result is the same regardless. *See Brownback*, 141 S. Ct. at 749 n.8. The misrepresentation exception applies when the government's misstatements are "essential" to the plaintiff's claim. *Schneider* v. *United States*, 936 F.2d 956, 961 (7th Cir. 1992). Here, the Heidermans allege that the Peace Corps owed a duty of care in handling Bernice's body, which they breached by losing it, resulting in harm to the Heidermans. *See Cochran* v.

---

[2] The dismissal is without prejudice to refiling should the Secretary determine that FECA does not apply and the Heidermans are able to replead the claim consistently with Fed. R. Civ. P. 11. Although the FECA provision specific to Peace Corps volunteers mentions only "injury or disease," *see* 5 U.S.C. § 8142(c)(3), the provision arguably incorporates the general FECA statute, which covers "injury or death" of federal employees in the line of duty, *see* 5 U.S.C. § 8102(a). *See also Throckmorton* v. *Director of the United States Peace Corps*, 787 F.3d 593, 593 (6th Cir. 1986) (finding that FECA covered a Peace Corps volunteer's injuries that occurred in Mali and the claims arising therefrom). There is at least a "substantial question" that FECA applies, and thus, the Secretary of Labor must make a determination of FECA coverage before the Heidermans can proceed with a claim in federal court based on Bernice Heiderman's death. *See Fuqua* v. *United States Postal Serv.*, 956 F.3d 961, 963 (7th Cir. 2020).

*Securitas Sec. Servs. USA, Inc.*, 59 N.E.3d 234, 249 (Ill. App. Ct. 2016). Although the complaint contains some allegations regarding incorrect statements about the arrival date of Bernice Heiderman's body, they are not essential to the negligence claim. Rather, the claim is premised on allegations that Peace Corps officials lost the body and truthfully admitted it, not just that they gave false information as to its whereabouts. Thus, this claim is not barred by § 2680(h) and survives dismissal.

  Turning to the IIED claim, the government argues that the Heidermans fail to state a claim under Rule 12(b)(6) because they have not alleged extreme and outrageous conduct. A plaintiff bringing an IIED claim under Illinois law must show that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended the conduct to inflict emotional distress or knew it was highly likely to do so, and (3) the conduct caused the plaintiff emotional distress. *See Schweihs* v. *Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Conduct is extreme and outrageous where it goes "beyond all possible bounds of decency." *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 81–82 (Ill. 2003). Relevant factors in assessing the extreme and outrageous nature of the conduct include the defendant's power over the plaintiff, the defendant's reasonable belief that its objectives were legitimate, and the defendant's knowledge that the plaintiff was particularly susceptible to emotional distress under the circumstances. *See Pilotto* v. *Urban Outfitters West, LLC*, 72 N.E.3d 772, 780 (Ill. App. Ct. 2017).

  The Heidermans allege that Peace Corps officials, knowing the Heidermans had lost a family member, repeatedly blamed them or Bernice herself for her death, starting with the very first call informing her family that she had died. They then lost Bernice's body while they were in control of it, significantly delaying its return to the family. These allegations plausibly allege extreme and outrageous conduct, which Peace Corps officials knew was likely to cause the

7

Heidermans emotional distress, and in fact did. *See Pilotto*, 72 N.E.3d at 780. The motion to dismiss the IIED claim is denied.

Finally, the government argues that the Heidermans fail to state a claim for NIED under Rule 12(b)(6) because they do not allege contemporaneous physical impact. An NIED claim requires showing the traditional elements of negligence (duty, breach, causation, and damages) and that the plaintiff was either in the "zone of danger" of the defendant's negligent conduct or was directly and contemporaneously physically impacted by it. *See Borcia* v. *Hatyina*, 31 N.E.3d 298, 310 (Ill. App. Ct. 2015).

The Heidermans do not allege that they were within a "zone of danger," so they must show some physical impact by the Peace Corps representatives' conduct. *Id.* The only allegation that arguably implicates the impact requirement is that William Heiderman screamed upon hearing of his daughter's death. (Dkt. 1, ¶ 92.) But emotional distress that causes physical symptoms is not enough. *See Schweihs*, 77 N.E.3d at 61. As a result, the NIED claim must be dismissed for failure to state a claim.

## **CONCLUSION AND ORDER**

The motion to dismiss or in the alternative to stay (dkt. 15) is denied in part and granted in part. The wrongful death claim is dismissed without prejudice so that the Heidermans can pursue a claim under FECA. The motion is denied with respect to the negligence and intentional infliction of emotional distress claims. The negligent infliction of emotional distress claim is dismissed without prejudice to repleading if plaintiffs can do so consistently with Fed. R. Civ. P. 11. Any amended complaint must be filed by January 17, 2022.

Date: December 17, 2021

_____
U.S. District Judge Joan H. Lefkow